# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                      Case No. 06-CR-207

CHRISTOPHER A. PASKEL, ANTHONY J. YATEMAN,
GARY A. KIRKSEY, DERRICK L. BOHANNON,
TOYA M. OLDS, MICHELLE M. MAYS,
TERRILL E. CRAWFORD, DAIDRA BROWN
and CHAZMAR D. SPIVEY,

    Defendants.

## MAGISTRATE JUDGE'S RECOMMENDATION TO THE HONORABLE RUDOLPH T. RANDA RE: DEFENDANT BROWN'S MOTION TO SUPPRESS

## NATURE OF CASE

On August 2, 2006, United States Magistrate Judge Aaron E. Goodstein issued a criminal complaint against ten defendants, including defendant Daidra Brown. On August 22, 2006, a federal grand jury in this district returned a two-count indictment against nine defendants, including defendant Daidra Brown. Count One charges all of the defendants, with the exception of defendant Brown, with conspiracy to possess with intent to distribute five kilograms or more of a mixture containing cocaine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Defendant Brown is the sole defendant named in Count Two. She is charged with knowingly and intentionally making an apartment available for use for the purpose of unlawfully manufacturing, storing and distributing cocaine in violation of 21 U.S.C. § 856(a)(2).

On August 25, 2004, defendant Brown appeared before Judge Goodstein for arraignment, entering a plea of not guilty. Pursuant to the pretrial scheduling order issued by the court, defendant Brown filed a motion to suppress her statement made on April 10, 2006, at the Potawatomi Bingo Casino, 1721 W. Canal Street, in Milwaukee, Wisconsin. (Docket #95). This motion will be addressed herein.

## MOTION TO SUPPRESS STATEMENTS

Defendant Daidra Brown moves this court for an order to suppress for use at trial an alleged statement she made to law enforcement officials on April 10, 2006, at the offices of her employer, Potawatomi Bingo Casino. On December 11, 2006, the court conducted an evidentiary hearing on the defendant's motion. At the hearing, Detective Herb Glidewell of the Milwaukee Police Department (MPD) testified on behalf of the government. Defendant Brown testified on her own behalf. Based on the evidence presented at the hearing, the court makes the following findings of fact.

### Findings of Fact

Beginning in late 2004, MPD Detective Herb Glidewell was involved in a continuing drug investigation of Kenyonta Harvester. During the course of that investigation, Detective Glidewell learned that defendant Brown (hereinafter the defendant) had a relationship with Mr. Harvester.

On April 10, 2006, Detective Glidewell, along with his partner, James Krueger, and two other MPD detectives went to the Potawatomi Bingo Casino to interview the defendant. This was part of a number of subsequent interviews that Detective Glidewell conducted following the March 2006 arrest of Mr. Harvester. Detective Glidewell initially had gone to the

defendant's home to interview her, but the residence was vacant, so he decided to contact the defendant at her place of employment.

When Detective Glidewell and the other detectives arrived at the Potawatomi Bingo Casino, they went to the security office to find out where the defendant worked. Detective Glidewell identified himself to the individual in the security office and explained that the detectives were involved in an ongoing investigation. Detective Glidewell told the individual that he was not at Potawatomi Bingo Casino to arrest the defendant, but that he just wanted to talk to her. The defendant was contacted and came to the security office. At that time, the defendant was a suspect in the investigation. Detective Glidewell testified that he had grounds to arrest the defendant at that time, although he had no intention of doing so.

When defendant Brown arrived at the security office, Detective Glidewell introduced himself, explained that he was conducting an investigation involving Mr. Harvester and that he wanted to ask her some questions. He asked if he could speak to her. According to Detective Glidewell, the defendant agreed.

Detective Glidewell, the defendant, and the other officers went into an office which was located within the security office of the casino. The defendant had never been in the casino's security office before. The office was small and contained a desk and at least two chairs. Detective Glidewell testified that the defendant and the four officers were seated in chairs in the room; defendant Brown testified that there were four or five officers present and that only she and one or two other officers had chairs. The rest of the officers were standing in the room. According to the defendant, one officer remained standing in front of the door during the interview. The door to the room was closed by one of the detectives for the privacy of the

defendant. (The defendant testified that there were two doors to the room, both of which were closed.) According to Detective Glidewell, he was seated across from the defendant.

After the defendant entered the room, she sat on a roller chair by the security supervisor's desk. According to the defendant, the officers in the room were introduced to her as Milwaukee Police Department officers; only one officer was introduced by name. The defendant testified that two of the officers were in front of the entrance door and one officer, who was directly in front of her, was writing notes on a yellow legal pad.

At the beginning of the interview, Detective Glidewell told the defendant that he and the other detectives had arrested Mr. Harvester and that they wanted to talk to her about her involvement in his activities. Detective Glidewell explained the facts of their investigation to the defendant and told her what they knew about her involvement in the drug trafficking. He told her to tell the truth. According to Detective Glidewell, he told the defendant that she was not under arrest and that she was free to leave. He also told her that she was not going to jail that day. He also explained that they came to her place of employment, not to embarrass her, but because she had vacated the address which they had for her.

The defendant testified that she was told she might have to go to jail and that one officer mentioned that her children might be taken away. According to the defendant, the conversation about her going to jail took place with one officer only. The defendant testified that she did not want to talk to the detectives, although she did not tell them that she did not want to speak to them. The defendant acknowledged that no one told her that she was under arrest. She also said that no one told her that she was not under arrest. Nor did anyone tell her that she was in custody or that she was not in custody.

- 4 -

Both Detective Glidewell and the defendant agree that the defendant did not ask to leave the room at any time, nor did she ask for an attorney. The parties agree that the defendant was not told that she had to remain in the room. The defendant testified that the officers did not tell her that she could leave the room. The defendant did not ask to continue the interview at another location, nor did she ask for food or a bathroom break. The defendant was not handcuffed during the interview.

The defendant thought she was under arrest because she was in an interview room with the officers. They were asking her questions and some of the officers were standing around her. The questions asked were all about Mr. Harvester.

The defendant testified that Detective Glidewell was very nice to her, but that she was intimidated by one officer who she described as a tall, older guy in his forties. He intimidated her because he kept interrupting her and correcting her statements, indicating that what she was saying was not what actually had occurred. He did not threaten her. The defendant did not ask if she was under arrest or to stop the interview because she did not know that she could do so.

Detective Glidewell testified that he did most of the talking during the interview. The defendant was very forthcoming in her responses to his inquiries and helped him to clarify his understanding of certain matters. The defendant did not appear to be under the influence of drugs, intoxicants or medication. The defendant testified she was not on any medications that day. Detective Glidewell took notes during the interview, as did his partner, Detective Krueger. The defendant was not shown the notes, nor was she asked to sign any papers.

Detective Glidewell told the defendant that there were consequences for her as a result of her involvement in Mr. Harvester's activities. No threats or promises were made to the

defendant during the interview or regarding her custodial status. No threats were made about her family or her continued employment, nor were any payments offered. The defendant was told it would benefit her to tell the truth. The defendant was free to leave during the interview.

During the interview, someone knocked on the door of the interview room, but the person was advised that the officers had not concluded the interview. According to Detective Glidewell, based on his years of experience, the defendant understood that she was not under arrest. He also testified that the defendant stated that she understood that she was not under arrest, although he could not recall her exact words.

Near the end of the interview which lasted approximately 20 to 30 minutes, the defendant was upset and crying a little. At that time she asked Detective Glidewell if she could speak to him alone. Accordingly to Detective Glidewell, he agreed to speak to her without anyone else present. However, the defendant testified that Detective Glidewell said he needed to have someone else in the room, so one officer stayed with them.

During this time, Detective Glidewell told the defendant that she had been used by Mr. Harvester and that he also had used her home. The defendant agreed and told the detective what was going on at her residence. The defendant freely provided this information. Detective Glidewell never raised his voice to the defendant. He told her that he understood her role in the drug dealing. This conversation lasted approximately five to ten minutes and, at its conclusion, Detective Glidewell gave the defendant a copy of his card.

Defendant Brown, who was 22 years old, also testified that she had been employed at Potawatomi Bingo Casino since December 5, 2005. On April 5, 2006, she was working the second shift (2:00 p.m. to 11:30 p.m.) as a fire keeper hostess, which involved taking care of the needs of guests on the floor of the casino.

## Analysis

The defendant seeks suppression of the evidence, asserting that the key issues are 1) whether she was in custody and, therefore, entitled to Miranda warnings when she was interviewed at her place of employment and 2) whether her alleged statement was voluntarily made. It is well established that a person questioned by law enforcement officers while in custody must be notified of his or her constitutional rights to counsel and the right against self-incrimination. Miranda v. Arizona, 384 U.S. 436 (1966). However, "Miranda warnings are not required merely because the individual questioned by law enforcement officers is a suspect or is the focus of a criminal investigation." United States v. Barker, 467 F.3d 625, 628 (7th Cir. 2006) (quoting United States v. Jones, 21 F.3d 165, 170 [7th Cir. 1994]). Rather, the individual must be "in custody" and must be subjected to interrogation before Miranda warnings are required to be given. Barker, 467 F.3d at 628; United States v. Abdulla, 294 F.3d 830, 834 (7th Cir. 2002).

An individual is "in custody" for Miranda purposes if his freedom of movement is restrained to the degree associated with a formal arrest. United States v. Wyatt, 179 F.3d 532, 535 (7th Cir. 1999). Thus, a custodial interview occurs when there is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Barker, 467 F.3d at 628 (quoting Miranda, 384 U.S. at 444). "This inquiry is determined from the view of 'how a reasonable man in the suspect's position would have understood the situation.'" Barker, 467 F.3d at 628 (quoting Jones, 21 F.3d at 170 [quoting Berkemer v. McCarty, 468 U.S. 420, 422 (1984)]). The court uses a totality of the circumstances test to determine whether a reasonable person would have believed that she was free to leave. Barker, 467 F.3d at 628; United States v.

Lennick, 917 F.2d 974, 977 (7th Cir. 1990). To make this determination, several factors are considered, including:

> (1) whether the encounter occurred in a public place; (2) whether the suspect consented to speak with the officers; (3) whether the officers informed the individual that he was not under arrest and was free to leave; (4) whether the individuals were moved to another area; (5) whether there was a threatening presence of several officers and a display of weapons or physical force; (6) whether the officers deprived the defendant of documents she needed to continue on her way; and (7) whether the officers' tone of voice was such that their requests would likely be obeyed.

Barker, 467 F.3d at 628; United States v. Wyatt, 179 F.3d 532, 535 (7th Cir. 1999).

In this case, the evidence shows that Milwaukee police detectives interviewed the defendant in a room in the security office at Potawatomi Bingo Casino in conjunction with their investigation of Mr. Harvester. Detective Glidewell explained that initially he had attempted to interview the defendant in her home, but that she had moved from the address he had as her residence. Therefore, the decision was made to interview her at work.

Detective Glidewell introduced himself, described the nature of their inquiry and asked the defendant if he could speak to her. Although Detective Glidewell and the defendant disagree as to whether or not the defendant verbally agreed to be interviewed, there is no dispute that the defendant did not tell the officers that she did not want to speak to them. Rather, it is undisputed that she willingly went into the room with the detectives. The door or doors to the room were closed for the privacy of the defendant.

The parties disagree as to whether the detectives were seated or standing in the small room. At least four detectives were in the interview room with the defendant. According to the defendant, one officer was standing in front of the exit door which would not be unusual given the small size of the room and the number of people in it. Moreover, there is no

indication that anyone told the defendant that she could not leave the room and the record is devoid of any evidence that the officer displayed any weapons or physical force.

The defendant acknowledged that she was not told she was under arrest or not free to leave the interview. She merely asserts that she was not told that she was not under arrest or free to leave the room. Detective Glidewell spoke to the defendant in a conversational tone. No threats or promises were made to the defendant during the interview.

The defendant testified that she felt intimidated by one officer during the interview because he kept interrupting her and correcting her by telling her that what she was saying was not what actually happened. The defendant testified that he did not threaten her.

Although the defendant may have felt she was in custody when she was being questioned by law enforcement officers, her subjective belief is not determinative of her custodial status. Rather, the inquiry into custodial status is determined from the view of how a reasonable person in the suspect's position would have understood the situation. Berkemer, 468 U.S. at 422. Here, there is no evidence that the defendant was deprived of her "freedom of action in any significant way." See Barker, 467 F.3d at 628.

The court has carefully considered the relevant factors to determine whether a reasonable person in the position of the defendant would have believed that she was free to leave. Based on such consideration, the court concludes that the defendant was not "in custody" at the time she was interviewed by law enforcement officers at her place of employment. Therefore, the detectives did not have to advise the defendant of her Miranda rights before conducting an interview with her. Accordingly, this court will recommend that the defendant Daidra Brown's motion to suppress statements be denied. (Docket #95).

## **CONCLUSION**

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that the United States district judge enter an order **denying** defendant Daidra Brown's motion to suppress statements. (Docket #95).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin, this 22nd day of December, 2006.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge